UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| JOHN VINCENT, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause No.: |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| MATTHEW WAITE, and | ) |
| | ) |
| CITY OF MONTGOMERY | ) |
| | ) |
| Defendants. | ) |

Serve Defendant Matthew Waite: Hold Service

Serve Defendant City of Montgomery
By the Mayor, the City Clerk, or the City Attorney at:
723 N. Sturgeon
Montgomery City, Mo 63361

## COMPLAINT

1. All tortious acts and events described herein occurred in Montgomery County, Missouri.

2. Jurisdiction is conferred upon this United States District Court by 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S. C. §§ 1981, 1983, and 1985(3).

3. At all times material to this action, Defendants were acting under color of State law.

4. At all times material to this action, Chief David Turner was the chief policy maker for Defendant City of Montgomery regarding the policies and actions of the City of Montgomery Police Department.

### Factual Allegations

5. On May 12, 2017, Defendant Matthew Waite was employed as a police officer by Defendant City of Montgomery.

6. At some point on May 12, 2017, Plaintiff's legally separated wife, Amber Townsend, spoke with Defendant Waite.

7. Ms. Townsend informed Defendant Waite that Plaintiff had been stating in texts that he (Plaintiff) would not give her their children at the appointed exchange time because they are being abused at the mother's home.

8. Ms. Townsend also presented Defendant Waite with a copy of 2016 child custody paperwork.

9. The "apparently legitimate" paperwork indicated that Ms. Townsend was due to take possession of the children at 7:00PM that evening.

10. At no point did Ms. Townsend or any other person allege that Plaintiff had planned to keep his children on that day for any reason other than his belief that they would suffer physical abuse and harm if he gave them to their mother.

11. Around 4:51 PM, Defendant Waite accompanied Amber Townsend to perform a "civil standby" so Amber could attempt to confront Plaintiff.

12. Defendant Waite himself approached the Plaintiff's home and knocked on the door.

13. Defendant Waite then began questioning Plaintiff about his communications with Ms. Townsend and his intention or lack of intention to turn the children over.

14. Their entire exchange is captured on Defendant Waite's body camera.

15. Plaintiff repeatedly tells Defendant Waite that his children are being abused at the Ms. Townsend's house, which is why he doesn't want to give them to her.

16. Plaintiff indicates that his children have disclosed abuse at Ms. Townsend's house to him and other members of his family.

17. The other witnesses to the children's disclosures are also present and confirming Plaintiff's assertion that the children had disclosed abuse at Ms. Townsend's home.

18. Plaintiff informs Defendant Waite that his children are willing to cooperate with and talk to authorities about the abuse they had suffered at the mother's home.

19. Despite such serious allegations, Defendant Waite repeatedly tells Plaintiff that he (Defendant) has no jurisdiction to speak to the children; take their statements about abuse in another county; call DFS; or in any other way address or deal with the serious allegations of children - currently present and residing in his jurisdiction - being taken out of the county to suffer abuse.

20. A parent with reasonable grounds and substantial evidence that their child will be abused if they follow a child custody order has the right to refuse to deliver their child into the hands of the child's abuser, when the alleged abuse has occurred subsequent to the child custody order and there is an urgent need to protect the child from physical harm.

21. The appropriate remedy in Missouri for a purported failure to properly abide by a child custody decree would be to file civil motions for enforcement or contempt with the supervising court.

22. There are no legal grounds in Missouri to arrest a father for merely stating he will not comply with a custody order to protect his children from abuse.

23. Reasonable officers are and would be aware that allegations that a child has disclosed abuse must be taken seriously and the policing priority should be locating the children; ensuring their safety; and involving Children's Division in the allegations of abuse.

24. The only potential criminal offense that Ms. Townsend brought to the attention of Defendant Waite is the possibility that Ms. Townsend's children were being physically abused at her home.

25. Defendant Waite repeatedly reminds Plaintiff that the abuse occurred in a different county, so it is not the Defendant's concern.

26. Defendant Waite repeatedly contends that the custody order, on the other hand, needed to be complied with in Montgomery City, so Defendant Waite was only concerned with that issue.

27. Defendant Waite repeatedly tells Plaintiff that, despite his children disclosing abuse at Ms. Townsend's home, Plaintiff's only lawful option is to turn over the children to her at the police station by 7PM.

28. Although Plaintiff is astonished at what he is being told; he plainly agrees that he will follow the law and will bring his children to the police station at 7PM for the court-ordered exchange.

29. Plaintiff's agreement to comply with the order after Defendant assures him that he must do so under the law demonstrates that Plaintiff had no knowledge that keeping his children from an abuser could be considered a crime in this instance or that he did not have the right to protect his children from an abuser.

30. Plaintiff's statements, actions, and agreements during his conversation with Defendant demonstrate that Plaintiff had no intention to knowingly violate the law.

31. After agreeing to comply with what Defendant Waite insists is the only lawful option,

Plaintiff requests Defendant Waite and Ms. Townsend leave his property.

32. Defendant Waite refuses to do so.

33. Plaintiff attempts to call another officer to remove Defendant Waite, who has no lawful authority to remain on Plaintiff's property.

34. Plaintiff also yells toward Ms. Townsend that he'll be filing civil motions to modify custody due to the abuse and to protect his children.

35. At this point, while Plaintiff is attempting to call another officer to remove Ms. Townsend and Defendant Waite for failing to leave his property upon his lawful request that they do so, Defendant Waite becomes angry and hostile.

36. Defendant comments "keep talking and you're going to end up in handcuffs."

37. Plaintiff informs Defendant that he is calling the police to have him (Defendant) removed.

38. Defendant replies, "Go ahead."

39. Moments later, as Plaintiff continues to use his cell phone to call the police, Defendant Waite quickly closes the distance to Plaintiff from a few feet to "nose to nose," while yelling at Plaintiff.

40. Defendant Waite tells Plaintiff that if Plaintiff says "one more thing," he (Plaintiff) is going to jail.

41. Plaintiff does not move and merely continues to stand in the same location with his hands down.

42. Plaintiff does request the Defendant "get out of [his] face."

43. Defendant Waite responds, "That's it! You're going to jail."

44. Defendant Waite strikes Plaintiff in the chest with Defendant's forearm or hand.

45. Immediately after striking Plaintiff, Defendant reaches out and grabs Plaintiff around his neck and tackles him.

46. Defendant Waite and Plaintiff fall off the porch and land in the grass.

47. During the attack Defendant Waite punches Plaintiff in the head.

48. At this point, Plaintiff is laying prone in his lawn with the Defendant 4-5 feet away from him.

49. Defendant attempts to stand and appears to slip on the grass, causing him significant injuries to his knee.

50. Unable to stand and place Plaintiff in handcuffs, Defendant kneels approximately four or five feet from Plaintiff.

51. At that time, Defendant Waite removes his side arm and points it at Plaintiff's head while Plaintiff lies face down.

52. With the gun pointed at Plaintiff's head, Defendant Waite calls for backup and yells at Plaintiff to put his [Plaintiff's] hands behind his back.

53. Despite issuing confusing directions and Plaintiff's compliance with Defendant's commands, Defendant continues to scream at Plaintiff to comply with a gun a short distance from Plaintiff's head.

54. Because Defendant Waite has suffered an injury during his attack upon Plaintiff, he continues to keep Plaintiff prone on the ground with a gun pointed at his head for an extended period at least four minutes.

55. Defendant warns Plaintiff "not to flinch," or he will be shot (while the gun is pointed at Plaintiff's head).

56. After more than four minutes, Defendant Waite allows and authorizes a citizen watching nearby to act on his behalf to place Plaintiff in handcuffs.

57. Defendant Waite hands the nearby citizen his handcuffs and the man proceeds to roughly handcuff Plaintiff's wrists; stomp on Plaintiff's lower back and ultimately apply extensive force to Plaintiff's upper back using his knee.

58. Defendant lacked probable cause to arrest Plaintiff for any crime at the time he told Plaintiff he was "going to jail" and attacked him.

59. No reasonable officer under the same circumstances could have reasonably believed there was probable cause to arrest Plaintiff for any crime at the time Defendant arrested and attacked Plaintiff.

60. Because Defendant Waite injured himself when he tackled Plaintiff, Defendant Waite ultimately requested charges against Plaintiff for Assault second degree and Resisting Arrest, omitting in all reports and statements that he attacked Plaintiff for speaking after Defendant told him not to.

61. All charges were ultimately dismissed.

62. While incarcerated as a direct result of his illegal arrest, Plaintiff was the victim of an

unprovoked assault while in the Montgomery County jail.

63. Unprovoked attacks from other inmates are reasonably foreseeable consequences of an illegal arrest.

64. Plaintiff was punched no less than twenty (20) times in the head.

65. In the moments after the attack, Plaintiff lost consciousness and began to vomit.

66. In the hospital, Plaintiff was diagnosed with a broken nose; a concussion; and an aggravation of a pre-existing left shoulder injury.

67. As a direct result of Defendant's illegal arrest of Plaintiff, Plaintiff spent a total of 9 days in jail before posting a $25,000 cash-only bond.

68. Plaintiff was then prosecuted for over 3 years relating to his alleged "resistance" to the Defendant's attack and for allegedly causing the officer's injuries.

69. This was not Defendant's first instance of excessive aggression, excessive force, unlawful arrest, or other similar conduct.

70. Upon information and belief, prior to being employed by Defendant, City of Montgomery, Defendant was disciplined, asked to resign, or terminated from, at a minimum:

    a. Hannibal Police Department, relating to a parking ticket encounter that resulted in a citizen being maced by Defendant
    b. Hermann Police Department, relating to unlawfully tasing a restrained citizen without justification.

**Count I, Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure Under § 1983**
(Defendant Waite, individual capacity)

71. Plaintiff re-asserts the allegations of paragraphs 1-70 and incorporates them herein as though fully re-stated.

72. Defendant Waite lacked probable cause or reasonable articulable suspicion that the Plaintiff had committed any crime at the time Plaintiff requested Defendant and Ms. Townsend leave Plaintiff's property.

73. Defendant lacked legal authority to remain on Plaintiff's property after Plaintiff requested that he depart.

74. Rather than depart, Defendant refused to leave and became hostile when Plaintiff called another officer to force Defendant to obey the lawful request of the Plaintiff.

75. By refusing to leave Defendant's property after any legal purpose to remain had passed, Defendant Waite violated Plaintiff's right to be free from unreasonable seizure by the government under the Fourth Amendment to the United States Constitution.

76. As a direct and proximate result of the illegal intrusion and search of his property, Plaintiff suffered the following damages:

    a. Loss of liberty
    b. Humiliation
    c. Emotional distress
    d. The violation of his constitutional rights
    e. Physical pain
    f. Concussion
    g. Broken nose
    h. Medical bills totaling more than $17,000
    i. Aggravation of pre-existing injury to left shoulder
    j. Unjust prosecution

77. Plaintiff's damages exceed $25,000

78. Defendant Waite acted intentionally, willfully, with evil intentions and/or with conscious disregard for the rights and safety of Plaintiff.

79. Defendant Waite's conduct was outrageous.

**Count II, Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure Under § 1983**
(Defendant Waite, individual capacity)

80. Plaintiff re-asserts the allegations of paragraphs 1-79 and incorporates them herein as though fully re-stated.

81. Defendant Waite lacked probable cause or reasonable articulable suspicion that the Plaintiff had committed any crime at the time Defendant attacked Plaintiff.

82. Defendant lacked legal authority to attempt to restrain Plaintiff's movements or to jail Plaintiff.

83. By arresting Plaintiff, Defendant Waite violated Plaintiff's right to be free from unreasonable seizure by the government under the Fourth Amendment to the United States Constitution.

84. As a direct and proximate result of the illegal seizure of his person, Plaintiff suffered the following damages:

a. Loss of liberty
    b. Humiliation
    c. Emotional distress
    d. The violation of his constitutional rights
    e. Physical pain
    f. Concussion
    g. Broken nose
    h. Medical bills totaling more than $17,000
    i. Aggravation of pre-existing injury to left shoulder
    j. Unjust prosecution

85. Plaintiff's damages exceed $25,000

86. Defendant Waite acted intentionally, willfully, with evil intentions and/or with conscious disregard for the rights and safety of Plaintiff.

87. Defendant Waite's conduct was outrageous.

**Count III, Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure Under § 1983 (negligent hiring)**
(Defendant City of Montgomery)

88. Plaintiff re-asserts the allegations of paragraphs 1-87 and incorporates them herein as though fully re-stated.

89. The policies of the Defendant City Montgomery were inadequate to prevent violations of the law by its employees or from hiring employees with obvious difficulties performing policing duties in a lawful fashion.

90. The Defendant City of Montgomery was deliberately indifferent to the substantial risk that its hiring practices were insufficient to prevent violations of law by its employees and/or to identify officer candidates who have significant history of excessive aggression; excessive force; or failing to comply with legal and policy standards while performing the job.

91. The failure of the Defendant City of Montgomery to prevent violations of law by its employees through its negligent hiring of Defendant, caused the deprivation of the Plaintiff's rights by Defendant Waite.

92. Defendant City of Montgomery's failure to prevent violations of law by its employees and/or its negligent hiring of Defendant is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

93. Specifically, Defendant City of Montgomery hired Defendant Waite either with

actual knowledge of his prior unlawful actions or they recklessly disregarded such information to such an extent as to be willfully blind to Defendant Waite's proclivity for exceeding his authority during confrontations with citizens.

**Count IV, Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure Under § 1983 (Ratification)**
(Defendant City of Montgomery)

94. Plaintiff re-asserts the allegations of paragraphs 1-93 and incorporates them herein as though fully re-stated.

95. Defendant Turner had final policymaking authority from Defendant City of Montgomery concerning the acts and failures to act of defendant Waite.

96. Defendant Turner ratified Defendant Waite's acts and failures to act in that he knew of, and specifically made a deliberate choice to approve of, Defendant Waite's misstatements, actions, and inactions described herein.

97. Specifically, Defendant Turner personally reviewed and "approved" Defendant Waite's report and other reports of his department relating to this incident.

98. Defendant Turner made a deliberate choice to endorse the actions of Defendant Waite as described herein.

99. Defendant Turner specifically ratified Defendant Waite's illegal actions of both remaining on Plaintiff's property without lawful authority and Defendant Waite's unlawful and unprovoked attack on Plaintiff.

**Count V, First Amendment Retaliation Actionable Under § 1983**
(Defendant Waite, individual capacity)

100. Plaintiff re-asserts the allegations of paragraphs 1-99 and incorporates them herein as though fully re-stated.

101. Plaintiff's yelling at the reporting party to get off his property; Plaintiff's attempts to call another police officer to remove Defendant Waite from his property; and Plaintiff's request that Defendant Waite "get out of his face;" were the substantial motivating forces behind Defendant Waite's decision to illegally arrest Plaintiff.

102. Plaintiff's statements to the reporting party, to Defendant Waite, and in his calling for another officer were protected Speech under the First Amendment to the United States Constitution.

103. As a direct and proximate result of the retaliation that violated his First

Amendment rights, Plaintiff suffered the following damages:

   a. Loss of liberty
   b. Humiliation
   c. Emotional distress
   d. The violation of his constitutional rights
   e. Physical pain
   f. Concussion
   g. Broken nose
   h. Medical bills totaling more than $17,000
   i. Aggravation of pre-existing injury to left shoulder
   j. Unjust prosecution

104. Plaintiff's damages exceed $25,000

105. Defendant Waite acted intentionally, willfully, with evil intentions and/or with conscious disregard for the rights and safety of Plaintiff.

106. Defendant Waite's conduct was outrageous.

## Count VI, Violation of First Amendment Retaliation § 1983 (Ratification)
(Defendant City of Montgomery)

107. Plaintiff re-asserts the allegations of paragraphs 1-106 and incorporates them herein as though fully re-stated.

108. Defendant Turner had final policymaking authority from Defendant City of Montgomery concerning the acts and failures to act of Defendant Waite and other officers under his command.

109. Defendant Turner ratified Defendant Waite's acts and failures to act in that he knew of, and specifically made a deliberate choice to approve of, Defendant Waite's misstatements, actions, and inactions described herein.

110. Specifically, Defendant Turner personally reviewed and "approved" Defendant Waite's report and other reports of his department relating to this incident.

111. Defendant Turner made a deliberate choice to endorse the actions of Defendant Waite as described herein.

112. Defendant Turner specifically ratified Defendant Waite's illegal actions of physically attacking and arresting Plaintiff in retaliation for making statements protected by the First Amendment, but that Defendant Waite did not like.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and reasonable

amount, for court costs, attorney's fees pursuant to 42 U.S.C. § 1988, and for all other such orders as are fair and reasonable and for damages for aggravating circumstances or punitive damages in such sums that will serve to punish Defendant Waite appropriately and that will deter others from similar behavior.

          _____/s/ John D. James_____
          John D. James #61070
          Attorney for Defendant
          14 Richmond Center Court
          St. Peters, Missouri 63376
          (636) 397-2411 Fax: (636) 397-2799
          e-mail: cjlaw@charliejames.com

     I certify that I have signed the original of this document and that I will maintain the original for a period of not less than the maximum allowable time to complete the appellate process.

           /s/John D. James_____
          John D. James